UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENDERVER JESUS GONZALEZ SOTO (A# 244-635-014),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY DETENTION CENTER,<br><br>Respondent. | No. 1:26-cv-07026 TLN SCR<br><br><u>FINDINGS & RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee proceeding through counsel with a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. The assigned District Judge referred the matter to the undersigned pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1). ECF No. 3.

**I. Factual and Procedural Background**

Petitioner is a citizen and national of Venezuela who applied for asylum at the Calexico (CA) Port of Entry on July 22, 2024, via the CBP One Application. ECF No. 6-1 at 6 (Form I-213). Immigration officials issued Petitioner a Notice to Appear, initiated removal proceedings pending a credible fear determination, and released him from detention. Id. at 6-7. The record is silent as to the method of release, but Respondent states that immigration officials granted Petitioner parole. ECF No. 6 at 1.

On June 22, 2026, local law enforcement arrested Petitioner for illumination of aircraft by

intense light under Texas Penal Code § 42.14(c). ECF No. 6-2 at 2-3. Petitioner states he directed his son's laser pointer at a drone above their house, not knowing it was a police drone. ECF No. 1 at 8. On July 15, 2026, Petitioner pled no contest to the charge and was sentenced to five days in jail and $270 in court costs.[1] Id. Immigrations and Customs Enforcement ("ICE") took Petitioner into custody from county jail on July 17, 2026. ECF No. 6-1 at 4. Petitioner is currently detained in the California City Detention Center within this judicial district. ECF No. 1 at 1. He does not have a final order of removal.

The petition challenges Petitioner's re-arrest and detention without a pre-deprivation hearing under the Due Process Clause of the Fifth Amendment. ECF No. 1 at 7. Petitioner maintains he is subject to the discretionary detention regime at 8 U.S.C. § 1226(a) and requests release or a bond hearing before an immigration judge in which the government must establish, by clear and convincing evidence, that he presents a risk of flight or danger. Id. 7-8. Respondent asserts that Petitioner is an applicant for admission under 8 U.S.C. § 1225(b)(2) but acknowledges that "that this case fits into the category of cases in which the Court has found that petitioner's previous parole into the United States is more significant than the manner of entry" and submits that a bond hearing is proper due to Petitioner's criminal history. ECF No. 6 at 1.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately

---

[1] The record reflects he pled to a Class A misdemeanor, which means that the light did not impair the operator's ability to control the aircraft. Texas Penal Code § 41.14(c).

alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply

for asylum . . . or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

**III. Analysis**

"Where a [noncitizen] falls within [the] statutory [detention] scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The undersigned infers from the manner immigration officials processed Petitioner and released him on parole that he is an applicant for admission subject to mandatory detention under 8 U.S.C. §§ 1225(b)(1) or (b)(2). See Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) ("Regardless of [whether § 1225(b)(1) or (b)(2)] authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit.") (citing 8 U.S.C. § 1182(d)(5)(A)). Thus, Petitioner is not entitled to habeas relief on the basis that Respondent has denied the procedural protections of 8 U.S.C. § 1226(a).

However, consistent with the Court's reasoning and rulings in substantively identical cases, the undersigned finds that the Mathews factors, on balance, show that Petitioner's re-arrest

without pre-deprivation notice and hearing violated his Fifth Amendment right to procedural due process. See Juan Carlos V.B. v. Chestnut, No. 1:26-CV-03077-TLN-SCR, 2026 WL 1224238, at *3 (E.D. Cal. May 5, 2026) (finding that "[n]otice and custody determination hearings . . . are the general processes required to terminate humanitarian parole[.]"); Charan S. v. Warden of the California City Det. Facility, No. 1:26-CV-03017-TLN-JDP, 2026 WL 1144158, at *5 (E.D. Cal. Apr. 28, 2026) (finding re-detention of asylum seeker without pre-deprivation notice or hearing violated due process); Jose A.C. v. Warden of the California City Corr. Ctr., No. 2:26-CV-01339-TLN-CSK, 2026 WL 1076330, at *5 (E.D. Cal. Apr. 20, 2026) (same).

In tailoring the remedy for this due process violation, the undersigned observes that the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." Id. at 129. Respondent maintains a post-deprivation hearing is warranted based on Petitioner's "criminal history," ECF No. 6 at 1, which consists of a Class A misdemeanor conviction for directing a laser pointer at a police drone. Respondent does not identify any exigent circumstances or a specific danger or flight risk resulting from that offense that would justify ratcheting-down Petitioner's due process rights. Accordingly, the undersigned recommends the petition be granted and Respondent be ordered to immediately release Petitioner.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Respondent be ordered to immediately release Petitioner HENDERVER JESUS GONZALEZ SOTO (A# 244-635-014) from their custody and to return all of Petitioner's documents and possessions at the time of release.

3. Respondent be directed to file a notice certifying compliance with the above provisions within three (3) days from the date of any final order requiring release.

4. If the government seeks to re-detain Petitioner, it must provide no less than seven

(7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

5. The final order entered in this case not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6. The Clerk of Court be directed to:

a. Serve a copy of any release order on the California City Immigration Processing Center; and,

b. Enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 21, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE